IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| MATTHEW RAY RILEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | CIV-10-416-D |
| v. | ) | |
| | ) | |
| JUSTIN JONES, Director, Oklahoma | ) | |
| Department of Corrections, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff, a state prisoner appearing *pro se* and *in forma pauperis*, brings this civil rights action pursuant to 42 U.S.C. §1983. In his Amended Complaint (Doc. # 9), Plaintiff alleges constitutional and federal law violations and has named correctional officials with the Oklahoma Department of Corrections ("DOC") and state-employed medical personnel as Defendants. The Defendants Jones, McCoy, Vaughn, Monday, Stebens, Gadberry, Bridges, Walker, and Laymon ("Defendants") have moved to dismiss the action pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) or, alternatively, for summary judgment pursuant to Fed. R. Civ. P. 56(b). Plaintiff has responded to the dispositive motion, and Defendants have replied to the Response. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. §636(b)(1)(B). For the following reasons, it is recommended that Defendants' Motion to Dismiss be granted.

1

I. Standard of Review

A motion to dismiss may be granted when the plaintiff has "failed to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). This review contemplates the assertion of "enough facts to state a claim to relief that is plausible on its face." Id. at 1974. Thus, "when the allegations in a complaint, however true, could not raise a [plausible] claim of entitlement to relief," the cause of action should be dismissed. Id. at 1966. A *pro se* plaintiff's complaint must be broadly construed under this standard. Erickson v. Pardus, 551 U.S. 89, 94 (2007); Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the generous construction to be given the *pro se* litigant's allegations "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991). See Twombly, 550 U.S. at 555 ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.")(quotations and citations omitted); Whitney v. New Mexico, 113 F.3d 1170, 1173-1174 (10th Cir. 1997)(courts "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf"). A court evaluating a Rule 12(b)(6) motion to dismiss may consider the complaint as well as any documents attached

to it as exhibits. Hall, 935 F.2d at 1112.

Summary judgment may be granted only where the pleadings and documentary materials "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the court reviews the evidence and inferences drawn from the record in the light most favorable to the nonmoving party. Jiron v. City of Lakewood, 392 F.3d 410, 414 (10th Cir. 2004). A dispute is "genuine" if a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Material facts" are "facts which might affect the outcome of the suit under the governing law." Id. Additionally, if the moving party demonstrates an absence of evidence regarding an issue on which the nonmoving party will bear the burden of proof at trial, the nonmoving party can defeat summary judgment only by designating with evidence outside of the pleadings "specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

II. Eleventh Amendment Immunity

In his Amended Complaint, Plaintiff alleges he is suing Defendants in both their individual and official capacities. The Eleventh Amendment provides immunity for states in actions brought in federal court by the citizens of that state. Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 238 (1985). This immunity extends to suits against a state agency, Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 100 (1984), and to suits for damages against state officials acting in their official capacities. Edelman v. Jordan, 415 U.S.

651, 662-663 (1974). Accordingly, Defendants' Motion to Dismiss Plaintiff's action for damages against them in their official capacities should be granted.

III. Exhaustion of Administrative Remedies

Defendants also move to dismiss Plaintiff's cause of action on the ground that Plaintiff failed to exhaust available administrative remedies concerning the claims raised in the Amended Complaint. The Prison Litigation Reform Act ("PLRA"), enacted in 1996, directs that: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). "[E]xhaustion requirements are designed to ... give the [institution] a fair and full opportunity to adjudicate their claims" before the plaintiff proceeds to file an action in federal court. Woodford v. Ngo, 548 U.S. 81, 90 (2006). The PLRA's exhaustion requirement applies "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 524, 532 (2002). Moreover, exhaustion of administrative remedies under the PLRA is required for all inmates seeking § 1983 relief in federal court even when the administrative procedure fails to provide a particular type of relief, such as monetary damages. Booth v. Churner, 532 U.S. 731, 734, 741 (2001).

Failure to exhaust administrative remedies is an affirmative defense. Jones v. Bock, 549 U.S. 199, 215-216 (2007). Once the affirmative defense is raised, the court must determine whether the plaintiff properly exhausted administrative remedies by "using all

steps that the [institution] holds out, and [by] doing so *properly* (so that the [institution] addresses the issues on the merits)." Woodford, 548 U.S. at 90 (quotation and citation omitted). "Proper exhaustion demands compliance with an [institution's] deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90-91.

The Special Report includes a copy of DOC's administrative grievance procedure, DOC Policy No. OP-090124. This well-established policy "has a requirement of informal consultation with staff, then three written steps: a Request to Staff form, a formal grievance, and an appeal to the administrative review authority." Thomas v. Parker, 609 F.3d 1114, 1117 (10th Cir. 2010)(citing DOC Policy No. OP-090124). Plaintiff must complete each of these steps, and do so following the procedures adopted by DOC, in order to exhaust his administrative remedies.

In his Amended Complaint, Plaintiff alleges that he exhausted available administrative remedies concerning only one of his claims. Amended Complaint (Doc. # 9), at 18. Plaintiff contends that he was unable to exhaust administrative remedies as to his remaining claims because of obstructive actions by DOC officials.

A. Count One - Deficiencies in Vegetarian Diet and Diet Change by Medical Personnel

In count one, Plaintiff asserts that he was denied his First Amendment right to freely exercise his chosen religion, House of Yahweh/Messianic, and that his rights under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc to 2000cc-5, were violated by the actions of various Defendants during his incarceration at the

5

William S. Key Correctional Center ("WSKCC") in 2009 and 2010. As factual support for this claim, Plaintiff asserts that his request for placement on the "Religious Vegetarian Diet" was approved. The Special Report reflects that Plaintiff was approved for a vegetarian diet on April 29, 2008. Special Report, Att. 2. Plaintiff asserts that since on or about January 1, 2009, Defendant Walker, the WSKCC kitchen supervisor, served him a vegetarian diet with "deficient canned substitutes for [f]resh [f]ruit and [f]resh [v]egetables." Plaintiff contends that in March 2009 Defendant Walker posted the DOC Master Menu and Plaintiff complained that WSKCC should be serving him "the required [f]resh [f]ruit and [f]resh [v]egetables as stated by the DOC Master Menu."

In count one, Plaintiff also alleges that on June 8, 2009, he was informed by Defendant Stebens, a registered nurse at WSKCC, that Defendant Dr. Gadberry, a physician employed by DOC to treat prisoners at WSKCC, had placed Plaintiff on the special "Diet for Health" because of his hypertension. Amended Complaint, at 9; Special Report, Att. 19, "Miscellaneous." During this medical visit, Plaintiff alleges he was given the option by Defendant Stebens of signing a liability waiver in order to continue to receive his vegetarian diet. Plaintiff admits that at some unidentified date he was returned to the vegetarian diet by the WSKCC kitchen staff. Amended Complaint, at 10. Plaintiff alleges he was again placed on the "Diet for Health" by WSKCC's food service manager on January 12, 2010, as a result of a medical order that he receive this diet instead of his previously-approved vegetarian

6

diet.[1] Plaintiff contends that the changes in his diet by WSKCC medical personnel violated his First Amendment right to freely exercise his chosen religion and also violated the RLUIPA.[2]

The uncontroverted record reflects that on March 17, 2009, Plaintiff submitted a Request to Staff to Defendant Monday concerning the deprivation of fresh fruit and vegetables on his special diet. Special Report, Att.11. Plaintiff alleged in this Request that the lack of fresh fruit and vegetables "deprives me of a nutritional diet and is contrary to DOC Policy, OP-070100 section 1.A." Id. There is no mention of a First Amendment or religious basis for the complaint. In response, WSKCC's acting deputy warden advised Plaintiff that "[p]er Policy OP-070202 WSKCC follows the Master Menu, and policy allows for substitutions." Id.[3] On March 24, 2009, Plaintiff submitted Grievance No. 09-10 to Defendant WSKCC Warden Laymon in which Plaintiff complained that WSKCC Kitchen Supervisor Walker "fails to follow the master menu for my vegetarian religious diet by serving fruit from a can (or Jello) more than 99% of the time, thus, depriving me of an adequate vegetarian diet, contrary to DOC policies, such as OP-070100 Section I.A." Id. Although the grievance described his special diet as a "vegetarian religious diet," Plaintiff

---

[1] Plaintiff admits in his original Complaint that "[o]n or about January 21, 2010, Plaintiff had a Medical appointment with . . . a WSKCC Physician, who prescribed a Medical order to remove Plaintiff from the 'Diet for Health,' and without requiring Plaintiff to sign a 'Liability Waiver.'" Complaint (Doc. # 1), at 12.

[2] Plaintiff's RLUIPA claim will be addressed separately *infra*.

[3] This policy governs "Food Preparation, Service and Delivery" for DOC facilities. Special Report, Att. 12 (DOC Policy OP-070100).

7

did not mention either the First Amendment or allege a religious-based deprivation in the grievance. In response to the grievance, Warden Laymon informed Plaintiff that the grievance was denied because WSKCC "follows the Master Menu and policy. Fresh fruit and vegetables are not always available; therefore they will be substituted according to the Master Menu and policy." Id. Plaintiff appealed the grievance decision to DOC's administrative review authority, and the appeal was denied. Id.

On April 6, 2009, Plaintiff submitted a Request to Staff to Defendant Stebens in which he complained that he was being served "high fat, mishandled whole milk" and requested "a healthier alternative" such as "low fat 1% milk due to my high blood pressure . . . ." Special Report, Att. 15. In response, Defendant Stebens advised Plaintiff that his diet would be discussed in a Hypertension Chronic Clinic in which Plaintiff was enrolled. Id. Plaintiff submitted a grievance on April 24, 2009, to Defendant Stebens, Grievance No. 09-22, in which Plaintiff complained that he needed "a medical order requiring that I receive low fat 1 % milk for health reasons . . . because medical has found that I have high blood pressure." Id. In response, Defendant Stebens denied the grievance and informed Plaintiff that he was seen in the Hypertension Chronic Clinic on April 25, 2009, by the physician and educated on the proper diet, that the physician did not see any reason to order that Plaintiff receive 1% milk, and that Plaintiff's "blood pressure has been within the normal range every time it has been checked." Id. His attempted appeal of this grievance decision was returned unanswered by DOC's medical services administrator, Defendant McCoy. In Defendant McCoy's letter dated June 3, 2009, Defendant McCoy advised Plaintiff he had violated policy by writing on

the Request to Staff and Grievance Response forms submitted with the grievance appeal. Id. Plaintiff was advised he could resubmit the grievance appeal within ten days. There is no evidence that Plaintiff resubmitted the grievance appeal.

On June 9, 2009, Plaintiff submitted a Request to Staff to Defendant Stebens complaining that he wanted to be returned to his vegetarian diet and demanding that the kitchen supervisor be advised "that feeding me from a can is unhealthy." Special Report, Att. 19, "Miscellaneous." In response to this Request to Staff, Defendant Stebens informed Plaintiff that the "Diet for Health is the indicated diet for the treatment of hypertension. It is entirely up to you if you want to sign a waiver. You need to speak to the Chaplain about your vegetarian diet." Id.

Plaintiff submitted a Request to Staff on June 10, 2009, to the WSKCC Chaplain concerning the issue of Defendant Stebens "forcing me to be served a meat diet called 'Diet for Health.'" Id., Att. 20. The Chaplain responded that he had talked with Ms. Stebens and that she would terminate the medical order for the "Diet for Health" if Plaintiff signed the waiver and then Plaintiff could return to the vegetarian diet. Id. Plaintiff submitted Grievance No. 09-29 to Warden Vaughn on June 22, 2009, demanding that the WSKCC Kitchen Supervisor be ordered "to provide me a healthy religious vegetarian diet instead of forcing me to choose between either: A) Eating unhealthy canned fruit, canned vegetables, and whole milk by consenting to and signing a health waiver, or B) Being forcibly fed meats not approved of or slaughtered by the Biblical standard." Id. In a lengthy response, Warden Vaughn advised Plaintiff that Plaintiff had grieved the same issue previously and that

9

"[b]ecause you did not receive the responses you preferred . . ., you are now attempting to obtain relief . . . by claiming your Religious and/or First Amendment Rights are being violated." Id. Warden Vaughn informed Plaintiff that his grievance was denied and his next step was to appeal the grievance decision to DOC's Administrative Review Authority. Id. Plaintiff's attempted appeal of the grievance to DOC's administrative review authority was returned unanswered with the explanation that the attempted grievance appeal contained more than one issue (medical, religious, and food service issues) in violation of DOC's grievance policy and because the Request to Staff was not presented to the appropriate staff member. Id. There is no evidence that Plaintiff resubmitted the grievance appeal or that his ability to exhaust his administrative remedies was obstructed by prison officials.

Plaintiff has not demonstrated that he exhausted every step of DOC's administrative grievance procedure with respect to his claim asserted in count one of a violation of his First Amendment right to freely exercise his chosen religion in connection with both (1) the adequacy of his vegetarian diet and (2) a diet change ordered by WSKCC medical personnel. Additionally, Plaintiff has not demonstrated that any prison official prevented him from exhausting his administrative remedies. Therefore, Defendants' Motion to Dismiss Plaintiff's First Amendment-based claims in count one for failure to exhaust available administrative remedies should be granted.

Alternatively, and with respect to his RLUIPA claims in count one, Plaintiff seeks damages and declaratory and injunctive relief against Defendants. Plaintiff is no longer in custody at WSKCC, and therefore his claims for declaratory and injunctive relief under

§1983 and the RLUIPA against Defendants are moot. See Abdulhaseeb v. Calbone, 600 F.3d 1301, 1311 (10th Cir. 2010)(plaintiff's transfer to another prison mooted his claims under RLUIPA for declaratory and injunctive relief against correctional officials at former prison); Green v. Branson, 108 F.3d 1296, 1300 (10th Cir. 1997)(prisoner's release from prison system mooted his claims for declaratory and injunctive relief against prison officials). Accordingly, Defendants' Motion to Dismiss Plaintiff's claims for declaratory and injunctive relief in count one should be granted.

The First and Fourteenth Amendments guarantee inmates the reasonable opportunity to pursue their sincerely-held religious beliefs. Gallagher v. Shelton, 587 F.3d 1063, 1069 (10th Cir. 2009). "What constitutes a 'reasonable opportunity' is determined in reference to legitimate penological objectives." Id. In order to state a claim that Defendants violated his First Amendment right to freely exercise his chosen religion, Plaintiff must "adequately allege that the defendants 'substantially burdened [his] sincerely-held religious beliefs.'" Id. (quoting Kay v. Bemis, 500 F.3d 1214, 1218 (10th Cir. 2007)). To state a claim under the RLUIPA, a prisoner must demonstrate that "he wishes to engage in (1) a religious exercise (2) motivated by a sincerely held belief, which exercise (3) is subject to a substantial burden imposed by the government." Abdulhaseeb, 600 F.3d at 1312.

Plaintiff contends that he holds a sincerely held religious belief that requires him to consume a vegetarian diet. Defendants do not question the sincerity of Plaintiff's religious belief, and it is assumed that Plaintiff's religious belief in a vegetarian diet is sincerely held.

The Tenth Circuit Court of Appeals has held that

11

> a religious exercise is substantially burdened under 42 U.S.C. §2000cc-1(a) when a government (1) requires participation in an activity prohibited by a sincerely held religious belief, or (2) prevents participation in conduct motivated by a sincerely held religious belief, or (3) places substantial pressure on an adherent either not to engage in conduct motivated by a sincerely held religious belief or to engage in conduct contrary to a sincerely held religious belief, such as where the government presented the plaintiff with a Hobson's choice - an illusory choice where the only realistically possible course of action trenches on an adherent's sincerely held religious belief.

Id. at 1315. Plaintiff's first claim against Defendants in count one is that the vegetarian diet offered him at WSKCC was deficient because it provided a paucity of fresh fruits and vegetables. Plaintiff admits, however, that his vegetarian diet at WSKCC included canned fruits and vegetables as substitutions for fresh fruits and vegetables and occasionally included fresh fruits and vegetables. Taking Plaintiff's allegations as true, Plaintiff has not stated a claim of a violation of his right to free exercise of religion or a violation of the RLUIPA. Other than Plaintiff's own conjecture, Plaintiff has presented no evidence that the vegetarian diet provided him at WSKCC was nutritionally inadequate merely because it largely substituted canned fruits and vegetables for fresh fruits and vegetables. Accordingly, Defendants' Motion to Dismiss Plaintiff's First Amendment and RLUIPA claim in count one of a deficient vegetarian diet should be granted for failure to state a claim for relief.

Plaintiff's second claim in count one is that the change in his diet ordered by WSKCC medical personnel on June 8, 2009, violated his First Amendment right to freely exercise his chosen religion, which required him to consume a vegetarian diet, and also violated the RLUIPA. Taking Plaintiff's allegations as true, Plaintiff has not stated a claim of a violation

of his right to freely exercise his chosen religion or a violation of the RLUIPA. The uncontroverted record reflects that WSKCC medical personnel ordered Plaintiff to receive a special "Diet for Health" reasons and also gave Plaintiff the opportunity to sign a waiver of liability and continue to receive his vegetarian diet. Plaintiff admits that he received the vegetarian diet despite the medical order for a special diet. There is no inference of substantial burden merely because medical personnel gave Plaintiff the option of continuing his vegetarian diet if he signed a liability waiver with respect to the "Diet for Health" ordered by medical personnel, and in light of Plaintiff's admission that he received a vegetarian diet despite the physician's order for a "Diet for Health" for medical reasons. Plaintiff has not stated a claim of a violation of his First Amendment right to freely exercise his chosen religion or his rights under the RLUIPA, and Defendants' Motion to Dismiss Plaintiff's claim in count one concerning the WSKCC physician's medical order changing his diet should be dismissed.

B. Count Two - Retaliation in Violation of First Amendment

In count two, Plaintiff alleges that he was placed on grievance restriction by Defendant Vaughn on June 25, 2009, without prior notice and in retaliation of his First Amendment right to file grievances. With respect to the issue of exhaustion, Plaintiff asserts that he submitted a grievance to Defendant Morton on June 30, 2009, identified as Grievance No. 09-003, regarding "improper reprisals" by Defendant Vaughn. Plaintiff asserts he submitted a grievance to Defendant Vaughn on August 3, 2009, identified as Grievance No. 09-41, regarding Defendant Vaughn's failure to follow DOC grievance procedures, and that

13

this grievance was denied. He alleges that his appeal of Grievance No. 09-41 to Defendant Morton, DOC's Administrative Review Authority, was "denied and allegedly granted."

The Special Report includes a copy of a letter addressed to Plaintiff and dated June 25, 2009, from Defendant WSKCC Interim Warden Vaughn. In this letter, Defendant Vaughn advised Plaintiff that he had failed to follow DOC's grievance procedure (1) with respect to the grievance submitted to Warden Vaughn and (2) with respect to two Request to Staff forms submitted by Plaintiff to a WSKCC official on the same issue. Special Report, Att. 21. Defendant Vaughn advised Plaintiff that he was being placed on grievance restriction as a result of Plaintiff's misuse and/or abuse of the grievance process. Id. Plaintiff submitted a "sensitive" grievance to Defendant Morton on June 30, 2009. Id., Att. 22. In this grievance, Plaintiff complained that he was placed on grievance restriction by Defendant Vaughn without prior notice and as a "retaliatory response to grievances" he had previously submitted. Id. Defendant Morton responded that the grievance, identified as Grievance No. 09-003, was being returned unanswered because it was "[n]ot of a sensitive nature." Id. Plaintiff submitted a grievance to Defendant Vaughn on August 6, 2009, identified as Grievance No. 09-41, in which he complained that (1) staff members were not following grievance procedures, (2) he had been placed on grievance restriction "without notice," and (3) "[t]he Reviewing Authority . . caused my grievance restriction with their inadequate responses." Special Report, Att. 23. In response to this grievance, Warden Vaughn advised Plaintiff that his grievance was denied with respect to his claim that the grievance restriction was imposed without notice. Plaintiff was advised that he was placed

14

on grievance restriction as a result of Plaintiff's (1) "continued filing of Requests to Staff and/or grievances concerning the same or nearly the same issues" and (2) "submitting additional Requests to Staff and/or grievances before allowing staff members the amount of time to respond as stipulated by policy." Id. Defendant Vaughn also denied relief as to Plaintiff's claim that staff members were not following grievance procedures. Plaintiff's attempted appeal of this grievance decision was returned unanswered by Defendant Morton because it contained more than one issue, contrary to DOC's grievance procedure.[4] Plaintiff's Response, Ex. 5, at 1. There is no evidence that Plaintiff resubmitted the grievance appeal, although he was advised he could resubmit the corrected grievance appeal within ten days. Plaintiff has not demonstrated he exhausted every step of DOC's administrative grievance procedure with respect to his claim raised in count two of retaliation in violation of his First Amendment right to present grievances. Additionally, Plaintiff has not demonstrated that any prison official prevented him from exhausting his administrative remedies. Therefore, Defendants' Motion to Dismiss the claim in count two due to Plaintiff's failure to exhaust available administrative remedies should be granted.

C. Count Three - Deliberate Indifference to Plaintiff's Serious Medical Needs

In count three, Plaintiff contends that he was subjected to cruel and unusual

---

[4] Although this unanswered return is directed toward Grievance No. 09-365, Plaintiff alleges that it is the unanswered return he received to his attempted appeal of the decision in Grievance No. 09-41. It is completely understandable that DOC's administrative review authority would have difficulty tracking Plaintiff's numerous grievances. Giving Plaintiff the benefit of the doubt, the undersigned has assumed that the unanswered return of the attempted appeal of the decision in Grievance No. 09-365 is actually the unanswered return of the attempted appeal of the decision in Grievance No. 09-41.

15

punishment in violation of the Eighth Amendment because he was provided an "unsafe and inadequate diet, contributing to Plaintiff's Hypertension Medical Condition." Amended Complaint, at 12-14. Specifically, Plaintiff contends that his request for "Low fat 1 % milk," which he alleges was presented in a Request to Staff and a grievance directed to Defendant Stebens on April 6, 2009, and April 23, 2009, respectively, was denied. Amended Complaint, at 12. Plaintiff also alleges that he was placed on the "Diet for Health" which was an "unhealthy, sacreligious meat diet of substituted foods." Amended Complaint, at 13. Plaintiff contends that he exhausted available administrative remedies concerning this claim in Grievance No. 09-22 and Grievance No. 09-29.

In Grievance No. 09-22 submitted by Plaintiff on April 24, 2009, to Defendant Stebens, Plaintiff requested "low fat 1 % milk for health reasons." Special Report, Att. 15. In a response to the grievance, Plaintiff was advised that he was educated on a proper diet at a Hypertension Chronic Clinic, that the physician saw no reason to order 1 % milk, and that Plaintiff's blood pressure had been within normal range since he began medication to treat this condition. Id. Plaintiff's attempted appeal of the grievance decision was returned unanswered by DOC's Medical Services Administrator, Defendant McCoy, who advised Plaintiff that he had failed to comply with DOC's grievance procedure because Plaintiff had written on the front of the Request to Staff and grievance decision forms submitted with the grievance appeal. Id. Plaintiff admits that he was advised he could resubmit the grievance appeal within ten days of receipt of the response. Id.; Amended Complaint, at 13. There is no evidence that Plaintiff resubmitted the grievance appeal or that any prison official

16

prevented Plaintiff from exhausting his available administrative remedies.

As found earlier, Plaintiff's attempted appeal of the grievance decision in Grievance No. 09-29 was returned to Plaintiff unanswered because he had not complied with DOC's grievance procedure by submitting more than one issue in his grievance appeal and by not submitting his Request to Staff to the proper prison official. Although Plaintiff was advised that he could resubmit the grievance appeal within ten days of receipt of the notice, there is no evidence that Plaintiff resubmitted the grievance appeal. Plaintiff has not demonstrated his exhaustion of every step of DOC's grievance procedure with respect to his Eighth Amendment claim in count three. Additionally, Plaintiff has not demonstrated that any prison official prevented him from exhausting his administrative remedies. Therefore, Defendants' Motion to Dismiss Plaintiff's claims in count three due to Plaintiff's failure to exhaust available administrative remedies should be granted.

D. <u>Count Four - Denial of Due Process and Equal Protection - Adequacy of Grievance Responses</u>

In count four, Plaintiff asserts that DOC's grievance procedure, DOC Policy No. OP-090124, is "inadequate, intentionally misused, ignored and/or not correctly followed by the Defendants" in an effort to "delay and/or prevent Plaintiff from obtaining relief and exhausting administrative remedies . . . ." Amended Complaint, at 17. As factual support for this claim, Plaintiff refers to various instances in which he believed WSKCC and DOC officials provided inadequate advice or responses to his Request to Staff forms, grievances, and grievance appeals. Plaintiff names Defendants Jones, Vaughn, McCoy, Bridges, and

17

Laymon in count four and alleges these Defendants were "deliberately indifferent to Plaintiff's Fourth Amendment right of due Process [by] depriv[ing] Plaintiff of an adequate Grievance Procedure and unprejudicial [sic] ability to pursue exhaustion of administrative remedies . . due to Defendants failure to adhere to and follow required DOC Grievance Procedure rules and regulations in violation of Plaintiff's Constitutional rights." Amended Complaint, at 18.

Plaintiff does not allege or demonstrate that he exhausted every step of DOC's administrative grievance procedure with respect to this claim. Plaintiff has also failed to show that any prison official obstructed his ability to exhaust his administrative remedies concerning this claim. Therefore, Defendants' Motion to Dismiss Plaintiff's claims in count four due to Plaintiff's failure to exhaust administrative remedies should be granted.

Alternatively, Plaintiff has failed to state a plausible claim upon which § 1983 relief can be granted in count four. "Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." Foote v. Spiegel, 118 F.3d 1416, 1423 (10th Cir. 1997). The Tenth Circuit Court of Appeals has held that the "denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under [42 U.S.C. ] § 1983." Gallagher v. Shelton, 587 F.3d 1063, 1069 (10th Cir. 2009). Moreover, prison grievance procedures do not create a liberty interest protected by the Due Process Clause. See Murray v. Albany County Bd. of County Comm'rs, No. 99-8025, 2000 WL 472842, *2 (10th Cir. Apr. 20, 2000)(unpublished op.)("[P]rison grievance procedures do not give rise to a protected liberty

interest requiring the procedural protections envisioned by the fourteenth amendment.")(quotation omitted); Anderson v. Colo. Dep't of Corr., No. 98-1477, 1999 WL 387163, at *2 (10th Cir. June 14, 1999)(unpublished op.)(holding state inmate's § 1983 "allegations relating to the requirements of [DOC] grievance procedure do not support a due process claim because those procedures do not create any liberty interest in the incarcerated petitioner"), cert. denied, 528 U.S. 1165 (2000). Additionally, Plaintiff's allegations that Defendants violated DOC's grievance policy do not state a claim of a constitutional violation. See Gaines v. Stenseng, 292 F.3d 1222, 1225 (10th Cir. 2002)("To the extent Gaines seeks relief for alleged violations of state statutes and prison regulations, [ ] he has stated no cognizable claim under § 1983."). Therefore, Defendants' Motion to Dismiss Plaintiff's claims in count four for failure to state a claim for relief should be granted.

## RECOMMENDATION

Based on the foregoing findings, it is recommended that Defendants' Motion to Dismiss (Doc. # 30) Plaintiff's cause of action pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim for relief and pursuant to 42 U.S.C. § 1997e for failure to exhaust administrative remedies be GRANTED. Plaintiff is advised of the right to file an objection to this Report and Recommendation with the Clerk of this Court by ___December 9th___, 2010, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421,

1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein, including Plaintiff's frivolous Motion for Preliminary Injunction (Doc. #3), is denied.

ENTERED this  19th  day of  November , 2010.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE